UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Criminal No.: 20-cr-00202 (DLF) |
| v. | : | |
| | : | |
| PASCALE CECILE VERONIQUE FERRIER, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION FOR COMPETENCY EXAMINATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion for a competency hearing and examination in the custody of the Attorney General pursuant to 18 U.S.C. §§ 4241(a-b), 4247(b).

**A. BACKGROUND**

The defendant was charged by complaint on September 20, 2020, with one violation of 18 U.S.C. § 871(a) (threatening to kill and injure the President of the United States) (Dkt No. 1). The grand jury returned an indictment charging that same offense on September 24, 2020 (Dkt No. 2). On September 28, 2020, a Magistrate Judge in the Western District of New York (where arrest occurred) issued an order requiring the United States Marshals Service to transport the defendant to the Washington, D.C., area (September 28, 2020, Case No. 20-mj-153 (W.D.N.Y.)), and the defendant arrived at the Northern Neck Regional Jail in Warsaw, Virginia, on around October 28, 2020. On April 19, 2021, the defendant was charged by superseding indictment with three federal criminal violations: (1) threatening to kill and injure the President of the United States, in violation of 18 U.S.C. § 871(a); (2) threats in interstate communications, in violation of 18 U.S.C. § 875(c); and (3) prohibitions with respect to biological weapons, in violation of 18 U.S.C. §

1

175(a).  (Dkt No. 15.)[1]

The charges stem from conduct that occurred in September 2020, when the defendant sent threatening letters from Canada to the United States, each containing the toxic poison ricin.  The ricin letters were addressed to the President of the United States at the White House, and to eight different government officials in the State of Texas.  The eight Texas ricin letters were sent to police departments and detention facilities that were involved in the defendant's 2019 arrest and detention for firearms possession charges and an immigration detainer.

The ricin letter sent to the White House was opened on September 18, 2020, at the White House Mail Sorting Facility in Washington, D.C., and included the following language:

> I found a new name for you:
> "The Ugly Tyrant Clown"
> I hope you like it.
> You ruin USA and lead them to disaster.
> I have US cousins, then I don't want the next 4 years with you as President.
> Give up and remove your application for this election.
> So I made a "special gift" for you to help you to make a decision.  This gift is in this letter.
> If it doesn't work, I'll find a better recipe for another poison, or I might use my gun when I'll be able to come.
> Enjoy!
> <u>FREE REBEL SPIRIT</u>

(White House Ricin Letter attached as Exhibit B.)

The Texas ricin letters used similar language, including references to "tyrants," a "special gift for you, which is in this letter," a warning of future deadly conduct ("if it doesn't work, I will

---

[1] A violation of 18 U.S.C. § 175(a) is punishable by a maximum term of life imprisonment.  The defendant is also charged in the Southern District of Texas in Case Number 1:20-cr-00861 with eight additional violations of 18 U.S.C. § 175(a) (prohibitions with respect to biological weapons) (each also punishable by a maximum term of life imprisonment) and eight violations of 18 U.S.C. § 875(c) (threats in interstate communications).  (S.D. Tex. Indictment attached as Exhibit A.)

2

find a better recipe for another poison, or I might use my gun when I'll be able to come"), and the signature "FREE REBEL SPIRIT."  (Texas Ricin Letter sample attached as Exhibit C.)

Law enforcement identified the defendant as the perpetrator of these crimes after determining, among other things: that the defendant's fingerprints were found on several of the letters; that the unique handwriting common to each letter matched a known sample of the defendant's handwriting; that the defendant was a citizen of Canada who had recently been arrested by police and detained at the targeted detention facilities; and that the defendant had recently used language on her social media account similar to some of the unusual language in the ricin letters. (*See* Affidavit in Support of Criminal Complaint, attached as Exhibit D.)

A search of the defendant's residence in Canada by Canadian law enforcement authorities identified items used to make ricin (including castor beans and sodium hydroxide), a handwritten list of names and addresses where the ricin letters were sent, a sign with the words "Free Rebel Spirit" (which was the signature used on each of the defendant's ricin letters), ammunition, and other incriminating items.  (Photos attached as Exhibit E.)

On September 20, 2020 (before an arrest warrant was issued and before the defendant's Canadian residence was searched), the defendant drove her car from Canada to the Peace Bridge border crossing in Buffalo, New York, which is located in the Western District of New York.  At the border, a U.S. Customs and Border Patrol ("CBP") officer asked whether she was okay, and the defendant replied that she was wanted by the FBI for the ricin letters (Statement attached as Exhibit F).  At the time, the defendant was in possession of a false identification document and weaponry including a loaded firearm, hundreds of rounds of ammunition, two knives, a stun gun, pepper spray, and a truncheon (photos attached as Exhibit G).  The defendant was interviewed

3

by law enforcement officials later that day, and she admitted that she sent the ricin letters to Texas and to the White House (Statement attached as Exhibit H).

The defendant has engaged in numerous instances of disruptive behavior during her pretrial detention, including at the Niagara County Correction Facility in the Western District of New York (incident reports attached as Exhibit I) and at the Northern Neck Regional Jail in Warsaw, Virginia (incident reports attached as Exhibit J).   The misconduct includes attempting to push correctional officers in order to abscond from her cell (Exhibit I at 7), throwing liquid substances at correctional officers (*id*. at 5), and multiple instances of refusing to obey orders requiring use of force by correctional officers (*see, e.g.,* Exhibit J at 9, 11, 13).

In February 2021, the defendant made recorded phone calls from the Northern Neck Regional Jail in which she threatened to kill the recipient of the call on a voice-mail message, and repeatedly left additional voice-mail messages with the same recipient taunting the individual and stating that he or she won't be "safe" (call summary attached as Exhibit K).

[SEALED INSERT]

Counsel for the United States has attempted to engage counsel for the defendant in discussions about this pending criminal case for many months and has repeatedly been told by counsel for the defendant that there are logistical challenges that make communicating with the defendant about the case difficult.   Counsel for the defendant has reported similar challenges at prior status hearings.   Counsel for the United States spoke with counsel for the defendant around two months ago to discuss the broad outlines of a potential proposal to resolve the pending criminal cases, but counsel for the United States has learned no feedback from that discussion.

**ARGUMENT**

In light of the serious and bizarre criminal conduct alleged, the behavioral reports from the detention facilities, the disturbing information in the Sealed Insert, the threatening phone calls, and the challenges that have been reported in communicating with the defendant, there is good reason to believe that the defendant may be "suffering from a mental disease or defect rendering [her] mentally incompetent to the extent that [she] is unable to understand the nature and consequences of the proceedings against [her] or to assist properly in [her] defense".   18 U.S.C. § 4241(a).

Pursuant to the provisions of 18 U.S.C. § 4247(b), the Court should commit the defendant to the custody of the Attorney General for a period not to exceed 30 days (unless a request for extension is made) in order that a psychiatric screening may be done by a licensed examiner designated by the court, at a suitable facility for the examination.   If the defendant is determined to be incompetent to stand trial, she should be remanded to the custody of the Attorney General for placement in an appropriate treatment facility.   See 18 U.S.C. Section 4241(d).   See also United States v. Shawar, 865 F.2d 856 (7th Cir. 1989) (defendant found incompetent must be transferred to custody of Attorney General for placement in an appropriate treatment facility); United States v. Lewis, 5 F.Supp.2d 51 (S.D.N.Y. 2014) (same).   The Speedy Trial Act provides for exclusion of time under these circumstances.   See 18 U.S.C. § 3161 (h)(1)(A).

The defendant's conduct and behavior raise reasonable cause to question the defendant's present ability to "confer intelligently with counsel and to competently participate in the trial of his case."   United States v. Collins, 491 F.2d 1050, 1053 (5th Cir. 1974).   It is particularly important that a thorough competency examination occur because the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to

stand trial.  See Godinez v. Moran, 509 U.S. 389, 394 (1993); United States v. Weissberger, 951 F.2d 392, 395 (D.C. Cir. 1991).   In the end, the competency determination must be that of the trial judge – it is "the duty of the District Court to make a specific judicial determination of competence to stand trial, rather than accept psychiatric advice as determinative on this issue."  United States v. David, 511 F.2d 355, 360 n. 9 (D.C. Cir. 1975) (citations omitted).   In making this determination, the Court will surely benefit from the results of a thorough psychiatric examination pursuant to 18 U.S.C. Section 4241.

The defendant objects to the relief sought.

**CONCLUSION**

For these reasons, and any other presented at a hearing, the motion should be granted.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:        /MJF/
MICHAEL FRIEDMAN
Assistant United States Attorney
New York Bar No. 4297461
555 4th Street, N.W.
Washington, D.C. 20530
202-252-6765
Michael.Friedman@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Criminal No.: 20-cr-00202 (DLF) |
| v. : | |
| : | |
| PASCALE CECILE VERONIQUE : | |
| FERRIER, : | |
| : | |
| Defendant. : | |

**PROPOSED ORDER**

Having considered the United States' Motion for Competency Examination and Hearing, as well as any materials presented in opposition thereto, **IT IS HEREBY ORDERED** that the motion be, and hereby is, **GRANTED**.

The Court finds that there is reasonable cause to believe that a mental competency examination is warranted. It is **ORDERED** that the defendant be committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. Section 4247(b) for a period not to exceed 30 days for placement in a suitable facility for a competency examination. The examination shall be conducted by a licensed or certified psychiatrist and/or psychologist, or more than one such examiner. A report shall be prepared by the examiner and shall be filed under seal with the Court with copies provided to counsel for the defendant and to the attorney for the government. The report shall include:

(1) The defendant's history and any present mental health symptoms relevant to his legal competency;

(2) A description of the psychiatric, psychological, and medical tests that were employed and their results;

7

(3) The examiner's findings;

(4) The examiner's opinions as to diagnosis and prognosis; and

(5) Whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

It is also **ORDERED** that the United States Marshal shall transport the defendant to a designated facility for the examination.

**IT IS SO ORDERED**.

_____
The Honorable Dabney L. Friedrich
United States District Judge