IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 20-CR-202 (DLF) |
| ) | |
| **PASCALE FERRIER** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S OPPOSTION TO THE GOVERNMENT'S REQUEST FOR A HEARING TO DETERMINE COMPETENCY AND FOR EXAMINATION OF THE DEFENDANT**

The Defendant, through undersigned counsel, submits the following opposition to the Government's request for a hearing to determine competency and for an evaluation of the Defendant pursuant to 18 U.S.C. §§4241(a) and (b). In support of this opposition, counsel state:

1. On September 20, 2020, the Defendant was charged by Criminal Complaint in this District with threatening to kill and injure the President, in violation of 19 U.S.C. §871. The Defendant was arrested in Buffalo, New York, in connection with the Criminal Complaint that same day.

2. The Defendant's first court appearance in this matter was a Rule 5 Proceeding in the Western District of New York, on September 22, 2020. At her initial court hearing, United States Magistrate Judge Kenneth Schoeder advised the Defendant of the charges pending against her in this district, her right to an Identity Hearing in the Western District of New York, and her right to counsel in the Rule 5 Proceeding. *See, United States v. Ferrier*, 20-MJ-153. After being advised of her right to counsel, the Defendant requested Judge Schoeder to assign counsel to represent

her in the Rule 5 Proceeding. Judge Schoeder granted the Defendant's request and assigned Assistant Federal Defender Fonda Kubiak to represent the Defendant while the matter was pending the Western District of New York. *United States v. Ferrier*, 20-MJ-153, Docket Entry of September 22, 2020.

Once counsel had been appointed to represent her, the Defendant (through counsel) moved to have an Identity Hearing and a Preliminary Hearing in the Western District of New York. The Government then moved to have the Defendant held without bond pending her transfer to this district. Judge Schoeder granted both parties' requests and continued the matter until September 28, 2020, for an Identity Hearing, Preliminary Hearing and Detention Hearing. *Id*.

At no time during the September 22, 2020, initial court hearing did the government express any concern about the Defendant's ability to understand the nature of the proceedings or the Defendant's ability to assist counsel in the preparation of her defense.

3. On September 24, 2020, the Defendant was indicted in this district and charged with one count of threatening to kill and injure the President, in violation of 18 U.S.C. §871©.

4. On September 28, 2020, the Defendant was arraigned in the Western District of New York on the indictment returned on September 24th. *United States v. Ferrier*, 20-MJ-153, Docket Entry of September 28, 2020. The Defendant waived her right to a formal reading of the indictment and entered a not guilty plea to the charge in the indictment. Judge Schoeder accepted the Defendant's waiver of a formal reading of the indictment and her not guilty plea. *Id*. Once again, the government did not express any concern that the Defendant did not understand the nature of her waiver of a formal reading of the indictment or the proceeding.

Once arraigned, the Defendant informed Judge Schoeder that she had elected to waive her

right to an Identity Hearing in the Western District of New York. Judge Schoeder accepted the Defendant's waiver of her right to an Identity Hearing. The government did not contest the validity of the Defendant's waiver of her right to an Identity Hearing, or, express any concerns that the Defendant did not understand the nature of her waiver.

At the Rule 5 Detention Hearing, which lasted nearly an hour, the Defendant requested that she be released to the third-party custody of a family member. The Defendant, through her counsel, explained that she had "strong family ties, and that her family remain[ed] very supportive, and have indicated to [defense counsel] that they will assist her and support her should this Court grant release." The Defendant further noted that she had "extensive" community ties, which included volunteering at Habitat for Humanity, participation in a local mentoring program, and volunteering at a local theater company. Again, and not surprisingly, the government never challenged the Defendant's ability to understand the nature of the legal proceeding against her or the Defendant's ability to assist her counsel in the preparation of her defense.

At the conclusion of the Rule 5 Detention Hearing, Judge Schoeder granted the government's request to detain the Defendant pending her transfer to this district.

Judge Schoeder never once suggested, let alone voiced any concerns, that the Defendant did not understand the nature of legal proceedings against her or was unable to assist AFPD Kubiak in the preparation of the Defendant's defense.

5. The Defendant first appeared in this district on November 4, 2020, at which time Magistrate Judge Meriweather conducted an Initial Appearance and a Detention Hearing.

At the Initial Appearance hearing Judge Meriweather explained to the Defendant that she had a right to counsel in this matter. Once informed of her right to counsel in this matter, the

Defendant asked Judge Meriweather to appoint counsel in this matter. Judge Meriweather granted the Defendant's request and appointed the Federal Public Defender office to represent the Defendant in this matter.

At the nearly hour long Detention Hearing, the Defendant once again requested to be released, and the government requested that the Defendant be held without bond. Judge Meriweather granted the government's request at the conclusion of the hearing, and continued the matter for a further status before this Court on November 19, 2020.

At no time during either the Initial Appearance hearing or the Detention Hearing did the government express any concern about the Defendant's ability to understand the nature of the proceedings or the Defendant's ability to assist counsel in the preparation of her defense. Moreover, as with Judge Schoeder, Judge Meriweather never once suggested, let alone voiced any concerns, that the Defendant did not understand the nature of legal proceedings against her; or, that the Defendant was unable to assist undersigned counsel in the preparation of the Defendant's defense.

6. On November 19, 2020, January 28, 2021, and March 2, 2021, this Court convened status hearings in this matter. During each status hearing, the Court -- with the consent of the parties -- tolled the running of the Speedy Trial Act until the next status hearing. The government never expressed any concern about the Defendant's ability to understand the nature of the proceedings or the Defendant's ability to assist counsel in the preparation of her defense during the status hearings.

7. On April 26, 2021, the Defendant was arraigned on a three-count superseding indictment. The Defendant waived her right to a formal reading of the indictment and entered a not guilty plea to the charge in the indictment. The Court accepted the Defendant's waiver of a

formal reading of the indictment and her not guilty plea. The government did not express any concern that the Defendant did not understand the nature of her waiver of a formal reading of the indictment or the proceedings.

8. From April 26, 2021, until November 10, 2021, the Court convened three additional status hearings in this matter (4/26/21, 6/24/21 and 9/9/21). Each status hearing included a tolling of the Speedy Trial Act by the Court, with the consent of the parties. The government never expressed any concern about the Defendant's ability to understand her right to a speedy trial in this case, or the Defendant's ability to assist counsel in the preparation of her defense.

9. In total, the Defendant has appeared in court ten times in the last 14 months before three different federal judges. The Defendant has never exhibited an inability to understand the proceedings and no defense counsel has reported to any judicial officer that the Defendant has not been able to assist in the preparation of her defense.

## ARGUMENT

Despite repeated court appearances where Ms. Ferrier not only exhibited no signs of any mental impairment but instead demonstrated she understood such complex legal principles as her right to an identity hearing pursuant to Federal Rule of Criminal Procedure 5, her right to a preliminary hearing pursuant to Federal Rule of Criminal Procedure 5.1, her right to a detention hearing pursuant to 18 U.S.C. § 3142(f), her right to have a formal reading of her indictment pursuant to Federal Rules of Criminal Procedure 10, the "Speedy Trial Act," – all of which Ms. Ferrier acknowledged in open court she understood and waived – the government maintains that, nearly fourteen months after her arrest, an evaluation pursuant to 18 U.S.C. 4241(a) and competency hearing are appropriate. While the government submits that the "record" supports this course of action, the record simply does not do so.

Ms. Ferrier understands the nature of the proceedings against her, as well as the role of the court, the prosecutor and undersigned counsel. She understands the distinction between a felony and a misdemeanor. And, she is actively assisting counsel in her defense.

Ms. Ferrier has not exhibited any "irrational behavior" during the course of these proceedings and her "demeanor" at all times has been completely coherent. *See, United States v. Weissberger*, 951 F.2d 392, 395 (D.C. Cir. 1991)(factors to consider when determining whether competency evaluation is warranted include "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.").

Misconstruing the competency inquiry with a fishing expedition relating to a possible insanity defense – a defense which has not been raised by the defense – the Government seeks solely to invade the defense camp and create an opportunity for its experts at the Bureau of Prison to have access to the defendant.

The test for competency is "whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).   *See also Wilson v. United States*, 391 F.2d 460, 463 (D.C. Cir. 1968).[1] Under this standard, the proffer of Ms. Ferrier's counsel, as well as Ms. Ferrier's conduct while before this Court and judges Meriweather and Schoeder, are sufficient to assure that Ms. Ferrier is competent.    As our Court of Appeals has noted "the applicable criteria measure one's ability to consult with his lawyer and to understand the course of legal proceedings. Thus, counsel's

---

[1] Indeed, the statute itself explains that the test for competence is whether the accused is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

first-hand evaluation of a defendant's ability to consult on a case and to understand the charges and proceedings against him may be as valuable as an expert psychiatric opinion on his competency." *United States v. David*, 511 F.2d 355, 360 (D.C. Cir. 1975). *See also, Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996)("Because legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect.").

Competence relates to the accused's present mental state during the legal proceedings. In contrast, insanity relates to the accused's ability "at the time of the commission of the acts constituting the offense ... as a result of a severe mental disease or defect ... to appreciate the nature and quality or wrongfulness of his acts." 18 U.S.C. §  17(a).   An accused may have been insane at the time of the alleged offense, and yet competent to stand trial, and likewise, an accused could have been sane at the time of the alleged offense, but incompetent to understand the legal proceedings and to assist counsel.

This distinction was addressed, at length, in *United States v. Gold*, 790 F.2d 235 (2d Cir. 1986):

> The issue of [the defendant's] competence to stand trial in entirely separate from the question of whether or not he sent the alleged communication. And although he may have available an insanity defense to the charges against him, and this offense would obviously involve his mental state, as does the matter of his competence to stand trial, the insanity defense and the matter of competence to stand trial are independent of one another because they involve [the defendant's] mental state at different times and because the ultimate questions are different. Thus, an insanity defense would focus on [the defendant's] mental state at the time of the sending of the alleged communication and on such a questions as whether [the defendant] was unable to appreciate the nature and quality or wrongful of his conduct. See 18 U.S.C. § 20 (Supp. II 1984); *United States v. Tarrango*, 398 F.2d 621, 622-25 (2d Cir. 1968)(en banc). By contrast, the matter of [the defendant's] competence focuses on his current mental state and on such questions as to his comprehension of the charges and of the nature of the proceedings against him, and his ability to assist properly in the preparation of his defense.

*Id*. at 238. *See also, Jackson v. Indiana*, 406 U.S. 715, 739 (1972)(the defendant's "criminal responsibility at the time of the alleged offense . . . is a distinct issue from his competency to stand trial."); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 672 (E.D. Mich 2002)("A defendant's criminal responsibility at the time of an alleged offense is distinct from the issue of competency to stand trial."); *Government of the Virgin Islands v. Gumbs*, 2000 WL 689335 (Terr. V.I.)(Same); *United States v. Mitchell*, 2009 WL 3181938 (D. Utah)(Same).

      The Government does not, because it cannot, cite to a single factor to support its bald assertion that Ms. Ferrier does not presently understand the nature of the proceedings against her, and/or her inability to assist properly in the preparation of her defense. Instead, the government relies on stale and untested allegations ("serious and bizarre criminal conduct alleged" -- but never charged; "behavioral reports from detention facilities" -- that have never been adjudicated; and "threatening phone calls" -- which have not resulted in the filing of any formal criminal charges) and purported "challenges . . . in communicating with the defendant" (all of which were due to *logistical problems* with detention facilities and had *nothing* to do with counsel's ability to communicate with the Defendant once the logistical problems were addressed) for its unsupported claim that Ms. Ferrier might suffer from mental illness and to seek an extensive and intrusive evaluation. The Government's request, therefore, must be denied.

### Due Process Requires That Before Ordering a Competency Evaluation The Defendant Be Allowed To Confront the Evidence Put Forth By the Government

      Section 4241 of Title 18, United States Code, is silent on the procedures necessary to determine whether there is "reasonable cause" to believe an accused requires a competency evaluation and what constitutes such "reasonable cause."   *Cf. Washington v. Harper*, 494 U.S.

210, 220 (1990)(substantive due process requires a standard regarding "what factual circumstances must exist before the State may [infringe upon a constitutionally protected right]"). Clearly, however, an accused like Ms. Ferrier, who has not been convicted and therefore remains shrouded in the presumption of innocence, has more rights than those who have already been convicted of a criminal offense. *Cf. Bell v. Wolfish*, 441 U.S. 520 (1979). Our Court of Appeals has recognized that even prisoners who have been convicted and sentenced are entitled to procedural due process protections before being moved from a prison to a mental hospital. *Matthews v. Hardy*, 420 F.2d 607 (D.C. Cir. 1969). *See also Vitek v. Jones*, 445 U.S. 480 (1980). An accused, like Ms. Ferrier, who remains innocent in the eyes of law, therefore, at the very least, is entitled to those same protections.

Ms. Ferrier has not had the opportunity to confront any witnesses who form the basis for the government's request for a competency evaluation. She has not been able to testify on the issue of competency, and she has not been able to present evidence and witnesses on his own behalf. Not only should the process to which Ms. Ferrier is due include an adversary hearing, complete with the right to confront and cross-examine the witnesses relied upon the Government in its request, the right to present witnesses on his own behalf regarding the issue of whether a competency evaluation is also warranted. *cf. Morrissey v. Brewer*, 408 U.S. 471 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778 (1972).

                                          Respectfully submitted,
                                          A. J. KRAMER
                                          FEDERAL PUBLIC DEFENDER

                                          /s/
                                          _____
                                          DAVID W. BOS

Assistant Federal Public Defender

/s/

_____
EUGENE OHM
Assistant Federal Public Defender

Counsel for Ms. Ferrier