UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NUMBERS: 20-CR-202 |
| v.                                   : | 23-CR-28 |
| : | |
| PASCALE CECILE VERONIQUE FERRIER, : | |
| : | |
| Defendant.                  : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America respectfully submits this memorandum in aid of sentencing.

### BACKGROUND

On September 24, 2020, defendant Pascale Cecile Veronique Ferrier was charged by indictment in the District of Columbia in Case Number 20-cr-202 with threatening to kill and injure the President of the United States, in violation of 18 U.S.C. § 871(a).  (Dkt No. 2, 20-cr-202.)  On April 19, 2021, the grand jury in the District of Columbia returned a superseding indictment charging the defendant with three federal criminal violations: (1) threatening to kill and injure the President of the United States, in violation of 18 U.S.C. § 871(a); (2) threats in interstate communications, in violation of 18 U.S.C. § 875(c); and (3) prohibitions with respect to biological weapons, in violation of 18 U.S.C. § 175(a).  (Dkt No. 15, 20-cr-202.)

On December 14, 2020, the defendant was charged by indictment in the Southern District of Texas with eight counts of prohibitions with respect to biological weapons, in violation of 18 U.S.C. § 175(a), and eight counts of threats in interstate communications, in violation of 18 U.S.C. § 875(c).  (Dkt No. 2, Exhibit 1, 23-cr-28).  On January 24, 2023, the indictment in the Southern District of Texas was transferred to the District of Columbia under Federal Rule of Criminal

1

Procedure 20 with the consent of the parties, and it was assigned Case Number 23-cr-28.  (Dkt No. 1, 23-cr-28.)

On January 25, 2023, the defendant entered guilty pleas in both criminal cases pursuant to plea agreements reached between the defendant and the United States.  In Case Number 20-cr-202, the defendant pleaded guilty to one count of prohibitions with respect to biological weapons, in violation of 18 U.S.C. § 175(a).  In Case Number 23-cr-28, the defendant pleaded guilty to eight counts of prohibitions with respect to biological weapons, in violation of 18 U.S.C. § 175(a).  As part of the plea agreements, the parties agreed under Federal Rule of Criminal Procedure 11(c)(1)(C) that the appropriate sentence includes 262 months of imprisonment to be followed by a term of supervised release.  The defendant also agreed to the entry of a stipulated judicial order of removal from the United States, the execution of which will occur immediately upon the completion of the sentence imposed.

At the plea hearing, the defendant admitted that she made homemade ricin toxin at her residence in Quebec, Canada, in September 2020, and mailed it with threatening letters in envelopes addressed to nine individuals located in the United States: then-President of the United States Donald J. Trump, and eight law enforcement officials in the States of Texas.  (Dkt No. 46 at p. 2-3, 20-cr-202).  The defendant had earlier that month expressed on her Twitter social media account that she agreed with another user who had proposed shooting then-President Trump in the face, and the defendant used a hashtag "#killtrump" with her message.  (*Id*. at 2.)  In 2019, the defendant had been arrested by law enforcement officers in Mission, Texas, and was held at three detention facilities in the State of Texas (the Hidalgo County Adult Detention Center, the Brooks County Detention Center, and the El Valle Detention Facility).  The defendant believed that the eight Texas State law enforcement officials to whom she had addressed the ricin letters were

connected to her arrest and detention in 2019.[1] The defendant had prepared and kept in her residence in Canada a handwritten list of names and addresses of the eight Texas State law enforcement officials as well as then-President Trump with the address of the White House. (*Id*. at 2.)

The hand-written letters mailed from Canada with the ricin toxin each referred to a "special gift" for the recipient, which was described as being "in this letter." Each letter stated that if the special gift doesn't "work," then the defendant would "find a better recipe for another poison." All but one of the nine letters threatened that the defendant "might use [her] gun when [she] will be able to come." Each letter accused the intended recipient of either being an "ugly tyrant clown" (Trump), responsible for tyrants under their command, a member of a gang of tyrants, or of being part of a system of dictatorships. The letter addressed to then-President Trump additionally stated: "You ruin USA and lead them to disaster. I have US cousins, then I don't want the next 4 years with you as President. Give up and remove your application for this election!" (Dkt No. 46 at 3, 20-cr-202.) The nine envelopes were received and opened in the State of Texas and in Washington, D.C., between around September 14-21, 2020. Special weapons of mass destruction coordinators and hazardous materials experts were required to deploy to various locations where the envelopes were received due to the presence of ricin toxin. The envelopes and letters were later sent to a special facility in the State of Maryland for safety and or further testing. (*Id*. at 4.)

On September 20, 2020, the defendant drove a car from Canada to the Peace Bridge Border

---

[1] The defendant was in possession of a loaded firearm and a false identification document when she was arrested in 2019 in Texas. The eight Texas State law enforcement officials to whom the threatening ricin letters were addressed included: (a) the Chief of Police of the Mission Police Department; (b) three law enforcement officers associated with the Hidalgo County Adult Detention Center (a Sergeant and two Corporals); (c) the Sheriff of Hidalgo County; (d) the Warden of the Brooks County Detention Center; (e) the Sheriff of Brooks County; and (f) the Deputy Warden of the El Valle Detention Facility. (Dkt No. 46 at 1-2, 20-cr-202.)

Crossing in Buffalo, New York, where she told border officials that she was wanted by the FBI for the ricin letters. The defendant was then in possession of a loaded firearm, hundreds of rounds of ammunition, two knives, a stun gun, pepper spray, a truncheon, and a false identification document. (Dkt No. 46 at 4, 20-cr-202.)

## SENTENCING ANALYSIS

### I.  Statutory Penalties

The statutory maximum penalty for a violation of 18 U.S.C. § 175(a) includes a lifetime term of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of any term of years or life pursuant to 18 U.S.C. § 3583(j); mandatory restitution under 18 U.S.C. § 3663A; an obligation to pay any applicable interest or penalties on fines and restitution; and a special assessment of $100 per felony conviction.

### II.  Application of the Sentencing Guidelines

The Sentencing Guidelines provide advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," *United States v. Booker*, 543 U.S. 220, 264 (2005), a criminal defendant for violations of the United States Code. As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

The parties agreed at the plea hearing and in the plea agreements that the following Sentencing Guidelines sections apply: (a) the base offense level under U.S.S.G. § 2M6.1(a)(2) (unlawful activity involving toxins) is 28; (b) two points should be added under U.S.S.G. § 2M6.1(b)(1) (use of toxin); (c) three points should be added under U.S.S.G. § 3A1.2(a) (official

victim) because the offense conduct was motivated by the status of the victims as government officers or employees; (d) five points should be added under the grouping rules of U.S.S.G. § 3D1.4 because there were more than five units of equally serious counts; and (e) three points should be deducted for acceptance of responsibility under U.S.S.G. § 3E1.1.  The parties also agreed that the defendant has no prior criminal convictions.   (Dkt No. 44 at 3-4, 20-cr-202.)[2]

Consequently, the parties agreed that the estimate offense level would be at least 35 points, which for a defendant with no prior criminal convictions would result in a Sentencing Guidelines range of 168-210 months of imprisonment (14 to 17 ½ years of imprisonment).

The parties did not reach agreement on the applicability of two additional Sentencing Guidelines sections: (1) whether four points should be added under U.S.S.G. § 2M6.1(b)(3) (substantial disruption), which is applicable when the offense resulted in "substantial disruption of public, governmental, or business functions or services" or "a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense"; and (2) whether 12 points should be added under U.S.S.G. § 3A1.4(a) (federal crime of terrorism), which is applicable when a felony offense "involved, or was intended to promote, a federal crime of terrorism."

The evidence supporting the applicability of U.S.S.G. § 2M6.1(b)(3) (substantial disruption) includes that "[s]pecial weapons of mass destruction coordinators and hazardous material experts were required to deploy to various locations where the letters were received, due to the presence of the ricin toxin power in the envelopes," and that "the letters were sent to a special facility in the State of Maryland for safety and for further testing."   (Dkt No. 46 at 4, 20-cr-202.) The United States suggests that the provision is applicable under the circumstances.   The Final

---

[2] The Final Presentence Report concluded that all of the agreed-upon Sentencing Guidelines provisions were applicable.

Presentence Report, however, determined that the provision was not applicable for any of the offenses of conviction in light of the available evidence. Evidence of more significant disruption was available in several published judicial decisions where the provision was applied. *See, e.g., United States v. Kimber*, 777 F.3d 553 (2nd Cir. 2015) (applying U.S.S.G. § 2M6.1(b)(3) where a defendant on four occasions deposited liquid mercury at a medical center in an effort to disrupt the facility's services, requiring the medical center to close its emergency room and delaying care for many waiting patients); *United States v. Guevara*, 408 F.3d 252 (5th Cir. 2005) (applying U.S.S.G. § 2M6.1(b)(3) where the defendant's anthrax hoax letter addressed to a judge effectively closed the federal building for a period of time, required that the building's air conditioning be turned off, and caused the closure for the day of the judge's courtroom and other federal agencies housed in the federal building).

      The applicability of U.S.S.G. § 3A1.4(a) (federal crime of terrorism) hinges on whether the violations of 18 U.S.C. § 175 were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5) (referenced U.S.S.G. § 3A1.4(a) App. Note 1). The Court must assess the available evidence as to the defendant's intent in committing the offenses. The evidence here supports that the defendant's letter addressed to then-President Trump was intended to coerce him not to run for reelection, and in that sense was calculated to influence or affect the conduct of our government. The letters addressed to the Texas State law enforcement officials appear to have been intended to retaliate against them in response to the defendant's period of detention in 2019. The Final Presentence Report determined that U.S.S.G. § 3A1.4(a) was applicable to each of the nine offenses.

      If the Court were to determine that each of the agreed-upon Sentencing Guidelines

provisions was applicable, as well as U.S.S.G. § 3A1.4(a), the Sentencing Guidelines range would be life imprisonment.  In the plea agreement, the parties noted that though they do not agree on an Estimated Offense Level, the potential range of Estimated Offense Levels "may be as low as 35 [with a 168-210 month range as set forth above] and as high as 43 [life imprisonment]."  (Dkt No. 44 at 4, 20-cr-202.)

### III. Statutory Sentencing Factors

As noted above, determining the recommended sentencing range under the Sentencing Guidelines is the first of two required steps for sentencing.  The second step requires the court to consider that range, to consider other relevant factors set forth in the Guidelines, and to consider the factors set forth in 18 U.S.C. § 3553(a).  *See, e.g.*, *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  These factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records convicted of similar conduct.

#### 1. Nature and Circumstances of the Offenses

The defendant committed extraordinarily serious federal criminal offenses by sending homemade ricin toxin through the mail system addressed to law enforcement officials and to the President of the United States.  There is absolutely no place for politically-motivated violence under United States law, and there is no justification for threatening public officials or endangering public servants.  The defendant's conduct was designed to instill fear, as evidenced by the threatening letters and the suggestions of future violent action.  That the defendant was in

7

possession of a firearm and ammunition when she was arrested raises grave concerns about her intentions.

### 2. History and Characteristics of the Offender

The defendant is a 56-year-old citizen of Canada and France and has no prior criminal convictions. She was arrested on one prior occasion on March 12, 2019, in Mission, Texas, and charged with tampering with a government record. Police records indicate that the defendant refused to obey orders from police on the evening of her arrest, and that she tried to push the police away and resist her arrest. She was in possession of a firearm, ammunition, and other weapons. The charge was dismissed on around May 17, 2019.

The defendant has an advanced educational degree from a school in France, and has a history of employment. The defendant does not have legal status in the United States, and she has agreed to the entry of a stipulated judicial order of removal from the United States, the execution of which will occur immediately upon the completion of the sentence imposed. The extent of the defendant's family support is unclear. The defendant appears to suffer from mental health issues as detailed in the Final Presentence Report at page 19.

The defendant accepted responsibility for her conduct by pleading guilty.

### 3. Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

The sentence should send a message to the defendant and the public that sending a toxic substance or threatening messages through the mail system will result in the loss of freedom for many years. The sentence must also adequately punish the defendant for her offense. In the circumstances of this case, and considering the totality of the circumstances, imposition of a term of imprisonment of 262 months (21.8 years), to be followed by a term of supervised release and

removal from the United States, will accomplish these sentencing goals, deter future misconduct, and protect the public.

### 4. Educational or Vocational Training or Medical Care

The defendant should be further evaluated for mental health treatment in light of the information set forth in the Final Presentence Report at page 19. The defendant may require transitional services as set forth in the Final Presentence Report at page 23.

### 5. Need to Avoid Unwarranted Sentencing Disparities

The starting point in the Court's analysis under § 3553(a)(6) should be to consider the sentences of "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). There are times when imposing "a Guidelines sentence can create an unwarranted disparity." *United States v. De La Cruz*, 397 Fed. Appx. 676, 678 (2nd Cir. 2010), *citing Kimbrough v. United States*, 552 U.S. 85, 91 (2007) ("[t]he judge may determine . . . that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing"). "[E]very sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

Sentences imposed in cases involving similar conduct indicate that a sentence of 262 months of imprisonment would comparatively constitute an appropriately harsh punishment and would avoid any unwarranted sentencing disparities. Some sentences in such cases include the following:

> *United States v. Shannon Richardson*, 13-cr-13 (E.D. Tx.) (pleaded guilty to violation of 18 U.S.C. § 175(a) (sentenced to 216 months of imprisonment and five years of supervised release) – Richardson manufactured homemade ricin toxin and sent it with threatening letters to then-President Barack Obama, former New York City Mayor Michael Bloomberg, and a well-known gun control advocate Mark

9

Glaze. The letters expressed a political motivation: "You will have to kill me and my family before you get my guns. . . . [What[']s in this letter is nothing compared to what [I']ve got planned for you." Richardson subsequently reported to the police that her husband was responsible for the ricin letters and made numerous false statements to the police about her involvement in the conduct. *See* Exhibit A.

*United States v. James Everett Dutschke*, 13-cr-81 (N.D. Miss.) (pleaded guilty to violation of 18 U.S.C. § 175(a) and other offenses) (sentenced to 300 months of imprisonment and five years of supervised release) – Dutschke manufactured homemade ricin toxin and sent it with threatening letters to then-President Barack Obama, Senator Roger Wicker, and Judge Sadie Holland. The letters expressed a political motivation: "Maybe I have your attention now [e]ven if that means someone must die. This must stop. To see a wrong and not expose it, is to become a silent partner to its continuance." Dutschke attempted to frame another individual from the community in the commission of the crime, causing the individual to be arrested and charged. After his arrest and detention, Dutschke attempted to recruit others to produce ricin and to mail it to Senator Wicker with a another threatening letter, again trying to make it appear as if another individual had caused the ricin to be mailed. *See* Exhibit B.

*United States v. Samuel Crump & Raymond Adams*, 11-cr-44 (N.D. Ga.) (found guilty of violations of 18 U.S.C. § 175(a)) (sentenced to 120 months of imprisonment and five years of supervised release) – Defendants stockpiled ricin for the purpose of attacking a U.S. city and federal buildings because of displeasure with the U.S. government. *See* Exhibit C.

*United States v. Jesse Korff*, 14-cr-471 (D. NJ.) (pleaded guilty to five violations of 18 U.S.C. § 175(a) and other offenses) (sentenced to 110 months of imprisonment and five years of supervised release) – Korff was accused of selling toxin substances on a dark web marketplace to allow buyers a way of committing a murder without detection. *See* Exhibit D.

*United States v. Jeff Levenderis*, 11-cr-52 (N.D. Ohio) (found guilty of violation of 18 U.S.C. § 175(a) and other offenses) (sentenced to 72 months of imprisonment and three years of supervised release) – Levenderis manufactured ricin and lied to law enforcement about it. *See* Exhibit E.

*United States v. Kyle Allen Smith*, 14-cr-239 (E.D. Wis.) (pleaded guilty to violation of 18 U.S.C. § 175(b) and government dismissed violation of § 175(a)) (sentenced to 40 months of imprisonment and ten years of supervised release) – Smith manufactured ricin in his residence while having homicidal thoughts. *See* Exhibit F.

*United States v. Danielle Layman*, 17-cr-156 (W.D. Okla.) (pleaded guilty to

violation of 18 U.S.C. § 175b and government dismissed murder-for-hire charge) (sentenced to 37 months of imprisonment and ten years of supervised release) – Layman manufactured ricin in her residence and attempted to retain a third party to use the ricin to commit a murder in a foreign country.  *See* Exhibit G.

*United States v. Betty Miller*, 17-cr-111 (D. Vt.) (pleaded guilty to violation of 18 U.S.C. § 175b) (sentenced to no imprisonment and five years of supervised release) – Miller manufactured ricin in her residence at a retirement facility and placed it in the food of other vulnerable residents to test its effectiveness at causing injury.  *See* Exhibit H.

These cases involve conduct that was similar in ways to that committed by the defendant here, and the sentences imposed range from no term of imprisonment at the low end (Betty Miller) to 300 months of imprisonment at the high end (James Everett Dutschke).  The defendant's conduct was most comparable to that engaged in by Shannon Richardson (216 months of imprisonment) and James Everett Dutschke (300 months of imprisonment), as each sent ricin along with threatening letters to the President of the United States and to other public officials with messages opposing the actions taken by the public officials or by the U.S. government.  But unlike both Richardson and Dutschke, the defendant here did not obstruct justice by attempting to falsely implicate a third party in the commission of the crime.  A term of 262 months of imprisonment falls mid-way between the terms of imprisonment imposed on Richardson and Dutschke, and well above the sentences imposed in the other comparable cases where similarly egregious and dangerous conduct was at issue.  The defendant will be in her mid-70s when she completes her term of imprisonment, and she will be removed from the United States.  She appears to suffer from mental health issues as described at page 19 of the Final Presentence Report.  A term of imprisonment of 262 months is a fair and appropriate sentence under all the circumstances.[3]

---

[3] The United States Probation Office recommends that the Court accept the plea agreement and sentence the defendant to 262 months of imprisonment followed by a five-year term of supervised release.  A lifetime term of supervised release would be above the high end of the terms of supervised release imposed in the comparable cases set forth

## CONCLUSION

For these reasons, and any others submitted prior to imposition of sentence, the United States respectfully urges the Court to impose a sentence consistent with the provisions of the United States Sentencing Guidelines and 18 U.S.C. § 3553(a).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____/s/_____
Michael J. Friedman
N.Y. Bar 4297461
Assistant U.S. Attorney
United States Attorney's Office
601 D St., NW
Washington, D.C. 20530
202-252-6765
Michael.Friedman@usdoj.gov

---

herein. U.SS.G. 5D1.1(c) provides that a court "ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." The application note provides that a court should "consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." The defendant engaged in the illegal conduct here while located in a foreign country. She will be in her mid-70s when released from a 262-month term of imprisonment and removed from the United States. Under the totality of the circumstances present in this case, a lifetime term of supervised release is appropriate.